SACRAMENTO, CALIFORNIA

FEBRUARY 28, 2011; MORNING SESSION

---oOo---


1    THE CLERK:  Calling 09-533, United States versus

2    Deandre Lornell Brown.

3         It's on for judgment and sentencing, Your Honor.

4         MR. REARDON:  Kyle Reardon and Michael Beckwith for

5    the United States.

6         MR. TONEY:  J. Toney with Deandre Brown.  He's present

7    in custody.

8         THE COURT:  This is the time and place set for

9    pronouncement of judgment and sentence in this case.

10        On the 21st of September, the jury returned a verdict

11   in this matter of guilty as to Count One, which charged the

12   defendant with a violation of Title 18 of the United States

13   Code, Section 371, conspiracy to commit sex trafficking of

14   children by force, fraud or coercion.

15        The jury also found the defendant guilty of Counts Two

16   and Four, which charged a violation of Title 18 of the United

17   States Code, Section 1591(a)(1), sex trafficking of children

18   by force, fraud or coercion.

19        As well, the jury found the defendant guilty of Counts

20   Three and Five of the Indictment charging him with a

21   violation of Title 18 of the United States Code, Section

1    1591(a)(2), participating in a sex trafficking venture.

2          The matter was then referred to the probation officer

3    for a presentence investigation and report.  The court

4    reviewed that report which is dated the 28th of January 2011.

5          The court is also in receipt of a number of documents:

6    The sentencing memorandum filed by the defendant on behalf of

7    the defendant, the objections to the probation officer's

8    report and sentencing memorandum filed by the government.

9    There have been a number of letters filed on behalf of the

10   defendant, including a letter that he himself has prepared.

11         The court has reviewed those letters as well as the

12   documents -- there is also the objections and the responses

13   of the probation officer to her recommendations.

14         Counsel, I note there's going to be some discussion

15   here because there's a difference of opinion as to what would

16   be the appropriate level based on the findings of the

17   probation officer.

18         Let me talk to Mr. Reardon about your objections

19   first.  The court has reviewed those objection, and as a

20   result, I might add that there's been an extensive amount of

21   review of the various sentences imposed on defendants who

22   have been charged and found guilty of similar crimes.

23         Is it your view that's based upon -- I'm addressing

24   the issue of variance that I must consider under 3553 -- the

25   sentence you recommend of 480 months is consistent with the

1    sentence imposed by this court?  I understand there's been

2    few trials, but the one trial was the McKesson case with a

3    sentence where 360 months was imposed.

4         All the sentences have been considerably less, but I

5    want to hear from the government about the issue of variance

6    as to the crimes charged in this case.

7         MR. REARDON:  Yes.  The one tried case was the United

8    States versus Moss.

9         THE COURT:  That's right.  McKesson was a plea.

10        MR. REARDON:  Plea agreement with cooperation

11   agreement.

12        THE COURT:  Right.

13        MR. REARDON:  First and foremost, as far as the issue

14   of variance, it is but one factor to consider among off the

15   3553(a) factors.

16        THE COURT:  Let's talk about that though.  There's

17   significance variance here.  Why is this case significantly

18   greater as opposed to what I read about the offense conduct

19   of those cases and cases I've handled in which there's been

20   plea agreements which seem to be similar to the conduct here?

21   Although, I must say, this is about as bad as I've seen in

22   terms of violence towards victims.

23        In any event, what about variance?  Should I be

24   concerned about variance?

25        MR. REARDON:  You should.  It's the one factor to

1    consider, but among the factors that the court should

2    consider in this particular case are the distinct differences

3    between this defendant and those other defendants.  We'll set

4    aside Mr. Moss' case and talk about the cases cited in the

5    government's brief, McKesson, Sanwal, Wilson, West.  Those

6    are cases in which the defendant pleaded guilty.

7         In many of them the defendant had a cooperation

8    agreement which resulted in a significant sentence reduction.

9    To take Mr. McKesson's case in particular, and there's one

10   typo in the government's sentencing memo I want to make sure

11   and put on the record, the probation officer in that case

12   recommended a 480-month sentence.  The same sentence that the

13   government is recommending in this case.

14        The government's brief said "48 months."  That's a

15   typo.  The probation officer in McKesson did recommend a

16   480-month sentence.  The government's recommendation after

17   cooperation was for 252 months.  The ultimate sentence was

18   slightly below that.

19        Again, it's the government's position that those cases

20   are different.  The defendants in those cases acknowledged

21   their guilt, they spared the victims from having to testify,

22   recount the horrors that they suffered.  And, again, in many

23   cases they cooperated not just with their guilty plea, but

24   with further information about other pimps --

25        THE COURT:  Some do; some didn't.  I did not see any

1    cooperation agreement.

2         MR. REARDON:  Mr. Sanwal did not cooperate.

3         THE COURT:  Mr. Epps did not either.  Very similar to

4    the facts here.

5         MR. REARDON:  I'm not familiar with Mr. Epps' case.

6         THE COURT:  I am.  There was a motion hearing, an

7    extensive hearing.  Ms. White was the prosecutor in that

8    case, so I'm keenly aware of the facts in that case.  And,

9    believe me, they're very similar to the facts in this case

10   and came up with a 151-month plea agreement sentence.  That

11   does concern me.

12        Not just that case, all these cases concern me when

13   you're dealing with a 480-month sentence and no one in this

14   court has ever received anything close to that, whether they

15   recommended it or not.  Judges haven't imposed a sentence

16   above the one case of 360 months.  All of them have been 235

17   months and less.  That's what troubles me.

18        MR. REARDON:  Mr. Moss did receive a 480-month

19   sentence --

20        THE COURT:  But he got 360 months for the conduct that

21   this defendant is convicted of.  I would add, Mr. Moss'

22   conduct, if it's possible, exceeded the brutality of this

23   defendant, in my view.

24        MR. REARDON:  There were more victims in Mr. Moss'

25   case.

1    THE COURT:  And his conduct.  You get to the point

2    where brutality becomes impossible to compare.  These are

3    brutal crimes, but I would say if I were sitting above it

4    all, I would say the number of victims and some of the

5    conduct was just unbelievably cruel to those victims.

6        I'm not suggesting this conduct is not cruel because

7    it was.  I don't know how to get to these points where you

8    kind of measure what is more cruel than the other, but

9    they're all cruel.  They seemed to be a little more egregious

10   conduct in view of the number of victims at least.

11       MR. REARDON:  Understood.  One thing about Mr. Moss'

12   case that is relevant to the court's analysis, he was

13   sentenced under previous versions of the law and the

14   guidelines as well.  The top of the guideline range was

15   significantly less than Mr. Brown's guideline range.

16       THE COURT:  Right.

17       MR. REARDON:  So there has been a fundamental shift in

18   how these cases are dealt with since the time of Mr. Moss'

19   case as to now.  That is, again, another factor the court

20   should consider.

21       The government is not asking for an upward departure.

22   It's not asking for a sentence outside the guideline range;

23   whether we apply the probation officer's guideline range or

24   what the United States believes the range to be, it's a

25   sentence within the range.

1          So the fact that that range has shifted since

2    Mr. Moss' case was tried and sentenced to now is a factor

3    that the court should consider.

4          THE COURT:  That's a valid point.

5          What about specific findings?  I guess we should get

6    to that also.  That is as to the issue relating to the

7    vulnerability of the victim and obstruction.

8          MR. REARDON:  As far as the vulnerable victim

9    enhancement goes, the United States will submit on that.

10   We've made our record.  We have argued.  We understand it's a

11   difficult argument for us to make, but we do believe there

12   are distinctions between Ashlyn and Quianna in this case

13   which distinguish them from the typical child sex trafficking

14   victim.

15         THE COURT:  It's much like these other cases.  These

16   victims have a great similarity in their background, their

17   age.  I'm not inclined to impose the unusually vulnerable

18   victim standard, because I don't think that standard applies

19   based upon the Williams-Castaneda case.

20         MR. REARDON:  The government has made its record.

21         THE COURT:  How about the obstruction?

22         MR. REARDON:  On the obstruction issue, the government

23   believes there was clearly an attempt to obstruct justice in

24   this case.  Now, the difference we have with the probation

25   officer is, I think, one where the probation officer's view

1  is if it wasn't successful, it therefore couldn't be

2  obstruction.  That's not the guideline.  The guideline

3  clearly contemplates both actual obstruction and an attempt

4  to obstruct.

5       We heard in this trial the jailhouse tapes.  We heard

6  Brittney Beacham testify about what she was told to do, which

7  was lie, in order to absolve the defendant of his conduct.

8  There was an attempt to obstruct the investigation in this

9  case.

10       THE COURT:  I tried to find some cases on this.  Let

11  me hear from Mr. Toney, and then I will give you my thoughts.

12       MR. TONEY:  This is an unusual case, in my experience,

13  unique, in that Brittney Beacham is still very much committed

14  to this defendant.  There was extensive correspondence

15  between them in the various jails.  I believe her counsel

16  will agree that she asked Deandre, "What should I do because

17  I was given the opportunity?"

18       He said, "Go ahead and testify."

19       He knew at that time that she would be testifying

20  against him.  There's a lot of other things I need to say,

21  but just on this one point, it's unusual in the situation,

22  although there may have been an attempt, essentially, it was

23  cured.  The jury was never bamboozled by this.

24       She testified to it and he retracted her attempts to

25  have her take the fall.  Whether or not it technically

1    constitutes obstruction under these circumstances, it should

2    not be an aggravating factor.

3         THE COURT:  Mr. Toney brings up a point that is

4    bothering me.  This woman -- obviously, Ms. Beacham cares

5    deeply for this defendant despite that relationship; in other

6    words, the defendant could have manipulated her testimony.

7    She has given every indication she would do anything for this

8    defendant.  She wants to marry him now.

9         We do have an instance where he did instruct her to

10   lie.  It turns out that he apparently told her to go and tell

11   the truth.  Ultimately, that's what she did.  It was

12   certainly powerful evidence to convict this defendant.

13   That's the part that troubles me.

14        If this was a different relationship, I might think

15   differently.  The fact I think he was in full command of this

16   woman's testimony, in my mind, and she did tell the truth,

17   how do you explain that?  This was by far the most damaging,

18   as damaging as any testimony elicited in this case.

19        Shouldn't I consider that factor?

20        MR. REARDON:  The court should, but we shouldn't

21   forget the fact that --

22        THE COURT:  At one time he wanted to --

23        MR. REARDON:  Obstruct the investigation, and she did,

24   in fact, go talk to a defense investigator and give him a

25   version of events which wasn't true.

1    THE COURT:  It did not inhibit the government in any

2    fashion.  I think the key here is the fact that she

3    ultimately testified truthfully.  I suspect that that should

4    be some credit to this defendant if she did.  It sounds to me

5    she would do anything this man told her to do.  That's been

6    my impression from day one.

7    MR. REARDON:  The court shouldn't deny the power of

8    Ms. Negin's counsel and the fact that Ms. Beacham was also

9    facing a mandatory ten-year sentence.

10    THE COURT:  I understand.  She had many reasons to

11    tell the truth.  But given her conduct, before, since, during

12    this trial, this defendant seems to have remarkable influence

13    over Ms. Beacham.

14    In any event, this is an unusual case, counsel.

15    MR. REARDON:  I would just say that an attempt to cure

16    the wrong you committed does not absolve you of that wrong.

17    The fact that the defendant came back after the fact and told

18    her to tell the truth, there could be a whole host of

19    reasons, perhaps he feared an obstruction count and

20    superseding indictment adding the obstruction charge.

21    We can't speculate.  All we know is what was on the

22    tapes and what was testified to.

23    THE COURT:  I think given these facts -- I've never

24    seen this type of situation before me and the application

25    notes aren't entirely helpful, but I think, counsel, those

1     applications state that this is the kind of case where the

2     obstruction should not apply, the two-level adjustment, given

3     all the circumstances here.

4          An attempt to suborn perjury, but for whatever reason

5     that the defendant changed his mind and the witness

6     eventually spoke the truth, she was a profoundly important

7     witness in this case and certainly was important in the

8     jury's mind, I'm sure, as it was to everyone who heard her

9     testimony.

10          I just don't feel there's a basis for making that

11     adjustment, counsel.

12          MR. REARDON:  Understood, Your Honor.

13          THE COURT:  Nevertheless, that does yield a finding of

14     an adjusted offense level of 42.  You're recommending that --

15     given that, what is your recommendation if that's the court's

16     finding?  Upper departure to 480 months?

17          MR. REARDON:  Guideline of 42 gives you 360 to life.

18          THE COURT:  360.

19          MR. REARDON:  480 would not be an upward departure.

20     For the reasons in our sentencing memo, we still believe a

21     480-month sentence is appropriate.

22          THE COURT:  Mr. Toney, let me hear your thoughts on

23     the guideline sentence as opposed to the recommendation of

24     the probation officer, and I know you're recommending a

25     240-month sentence.

1          Anything you want to expand on that recommendation?

2          MR. TONEY:  Well, under these circumstances, you're

3     finding the obstruction should not apply, then it shouldn't

4     alter the guideline, as I see it.

5          THE COURT:  The guideline would still be 360 to life;

6     right?  You're seeking a downward departure.

7          Tell me how we get to a downward departure; what is

8     the basis of that?

9          MR. TONEY:  First of all, the probation officer

10    extensively talks about the background of the defendant,

11    which is now something, as I understand it under the

12    guidelines, the court can consider.

13         The fact that the girls involved all had -- Quianna

14    and Ashlyn had prior activities as a prostitute and

15    subsequent, we tried to negotiate this case.  The government

16    was in a position where it felt that it would not agree to

17    anything close to a statutory minimum.

18         Mr. Brown, however, did not testify.  He just put the

19    government --

20         THE COURT:  What was -- the statutory minimum being

21    what?

22         MR. TONEY:  I think 15.

23         THE COURT:  15 years?

24         MR. REARDON:  The jury made a special finding that

25    force was involved, so the minimum is 15 years.

1    MR. TONEY:  So we're talking about an individual who

2    the Probation Department feels should get some leniency based

3    on his upbringing, the very poignant letters from his mother;

4    stepping back, the recommendation of 300 months is a lot of

5    time.  A lot of people do less time for killing people.

6        What happened here was -- I'm not belittling the

7    conduct or trying to downplay it, but the probation officer,

8    I think, did a very thorough investigation of this, including

9    comparable cases in this district.  I know he doesn't get an

10   acceptance, although he accepted the conduct and wrote to the

11   court and said that he's sorry for what he did, also unusual.

12       But the recommendation here of 25 years is a lot of

13   time in an abstract sense.  It's, I believe, sufficient to

14   satisfy the 3553 guidelines, especially on somebody with a

15   minor record, three misdemeanors and a clear sense of

16   remorse.  Some of the letters that have been written on his

17   behalf, I think, indicate that he has been a changed person.

18       THE COURT:  Counsel, you wish to add anything more

19   with respect to your ultimate recommendation?

20       MR. REARDON:  No, but I would like to respond to one

21   comment Mr. Toney made.  Any implication that the victims in

22   this case are somehow responsible for the defendant's crimes,

23   the government takes strong issue with.  These are 15,

24   16-year old girls who the defendant exploits for his own

25   criminal purpose.

1           THE COURT:  The evidence is that he kidnapped,

2     essentially.  I'm would not agree with Mr. Toney.

3           Be that as it may, it goes to the issue whether they

4     are responsible.  I understand -- I understand what your

5     point is and the government's point.

6           Anything else you want to respond to?

7           MR. REARDON:  No.  I think most of the points are

8     addressed in the sentencing memo.  We think the nature and

9     circumstances of the act, the vulnerability of the victims,

10    defendant's exploitation and physical violence towards those

11    victims -- the brutality that he demonstrated towards both

12    victims, and let's not forget that Quianna was within -- for

13    months if not years, and he was brutal and ruthless and a

14    monster towards her, and there's nothing in the record to say

15    had he not been stopped that that wouldn't have continued,

16    that there wouldn't have been more girls, more Ashlyns that

17    he kidnaps and does the same thing.

18          There is something to be said for the fact that the

19    defendant only had two victims, but the government would

20    strongly argue to the court that that wasn't where he was

21    going to stop.  There were more girls out there that he was

22    going to exploit, put out on the street and profit from.

23          It's our position that the 480-month sentence is

24    necessary to not only punish him for his conduct, deter him

25    from future conduct, but also to send a message to the

1  community that this behavior is not appropriate and it will

2  be dealt with severely and harshly and you will be sent to

3  jail effectively for the rest of your life if you choose to

4  engage in the same type of behavior.

5  THE COURT:  I'll make my finding.  I want to hear from

6  the defendant.

7  Do you intend to say anything?

8  Before you do, I'm going to make a finding here the

9  offense level is 42, criminal history category is three,

10  guideline range is 360 months to life as to Count Two and

11  Five -- Count One is 60 months.  Count Two and Five is

12  300 months.

13  Currently the probation officer is recommending

14  300 months.  As to the findings of 42 offense level and

15  criminal history finding three, those are my findings.

16  Anything you want to say for yourself, Mr. Brown?

17  THE DEFENDANT:  Yes, sir, I would.

18  I would like to say I am sorry and I know that these

19  men are doing their job.  I don't show no remorse -- I show

20  great remorse -- excuse me -- for what my actions have

21  occurred in this case and everything else coming to this

22  case.

23  I do understand and accept full responsibility.  I

24  really -- like I said in my letter, I do pray every day and I

25  pray for these people.  In my heart, I know I was wrong and

1    that I am asking for leniency today because I know I can

2    change and I know that I could be a better person.

3            THE COURT:  Mr. Brown, I want to interrupt you.

4    Here's my question to you:  I'm looking at your letter.  The

5    first thing you tell me is you apologize for wasting the

6    court's time and money.  Then you talk about the victims

7    generally.

8            You say you made bad choices.  You want to be a good

9    father to your children.  You don't want to see your children

10   make the mistakes that you've made.  You're remorseful

11   because you violated the laws of this country, but our

12   discussion this morning, you violated the laws of humanity.

13   What you did in any country would probably be a crime with

14   very few exceptions that I can think of.

15           So it's not the violation of the law.  We know that.

16   We understand you want to be a good father to your children

17   and you don't want them to make the same mistakes that you

18   made.  You acknowledge you made bad choices.

19           But the focus of our discussion, if you've been

20   listening, is not about any of that.  It was about the pain

21   and suffering you've inflicted on these young girls.  That's

22   the crux of my concern and I think it should be the crux of

23   your concern.  You don't mention their names.  You don't talk

24   about them individually.

25           I mean, the things you did were inhuman.  A man -- to

do what you did takes some kind of special feeling toward
woman and little girls.  You make no comment about that.
It's all very general.

What about what you did to these girls?

THE DEFENDANT:  What I did, sir, there is no question
that I did wrong.  I am very, very -- I pray.  I really do
pray for these victims, pray that they -- something like this
will never happen again in their life.  I pray for the
victims individually.

I ask for their forgiveness in this case.  I ask
greatly for their forgiveness in this case, knowing that the
things and intentions and everything else was wrong.  I pray
every night.  I pray for their family.  I pray for them.  I
pray for getting them on the right track and me to do right.
I do show great remorse for the victims, Your Honor.  I
really do.

THE COURT:  I still -- victims out there, these
victims, but I'm troubled with that, being a little more
direct about it.  I know you're generally unhappy.  You're
facing many, many years of your adult life in prison.  I
understand you feel pretty bad about what your choices were,
quote, unquote, and what you did that resulted in this
sentence, but I'm booking for some understanding.

One of these victims, as I understand it, is out
turning tricks again.  It goes on and on.  These young girls

1   suffer this brutality and domination and pain, and yet they

2   can't get out of that spiral.  It's a death spiral.

3          Suppose this was your mother when she was a teenager?

4   Suppose it was somebody -- I don't know if you care about

5   Brittney Beacham.  She cares a lot about you.  What you did

6   to her what just inhuman, brutal.  You wouldn't do that to a

7   dog.  You wouldn't do it to an animal, but you did it to

8   these girls.  I don't know what it is, how you feel about

9   that.

10         I know you're sorry about it.  Maybe you're not

11  capable of expressing those feelings.

12         THE DEFENDANT:  I understand exactly what you're

13  saying.  I do have a daughter.  I do, and I would hate to see

14  something occur like that in her life.

15         THE COURT:  What would you do if a man did that to her

16  when she was 14 years old?

17         THE DEFENDANT:  I couldn't say.  I do understand.

18         THE COURT:  Anything further?

19         THE DEFENDANT:  No, sir.  Thank you.  Thank you very

20  much.

21         MR. TONEY:  Can I make a comment or two?

22         THE COURT:  Yes.

23         MR. TONEY:  This letter, I believe, was heartfelt from

24  him.  He may not have expressed it the way you want.  It was

25  not solicited by me.

1     THE COURT:  It's not what I want, it's just the

2   questions I have about it.

3     MR. TONEY:  I understand.  I think it's important to

4   understand that he wasn't being prompted by me or anyone else

5   to write it.  I realize it's different than an acceptance,

6   but it was his decision not to testify.  He saw the writing

7   on the wall.

8     Those things weigh in his behalf, and the Probation

9   Department did an extensive and expert study in this case,

10  including other cases, and I think their recommendation is

11  plenty of time to serve.

12    THE COURT:  You raise another point.  He didn't

13  testify, but the victims had to testify.  In these cases I've

14  had, these cases all get pled out for that very reason,

15  again, the brutality in this circumstance.  I don't like to

16  think about it, it's so bad.  I'm sure we all feel the same

17  way.  I hope the defendant feels that way.

18    But these girls had to come up and testify about what

19  happened to them, what happened to their body.  That troubles

20  me; that the defendant sat there, listened to this, and then

21  his response today is somewhat troubling as well.

22    Be that as it may, it's not that he didn't testify,

23  but that they had to testify.  What about that?

24    MR. TONEY:  That's why probably it's not down at 15 or

25  20 years, but, by the same token, it shouldn't be at

1    40 years.  That's all I'm saying.  I'm not saying he gets the

2    benefit of that which would have greatly diminished the

3    sentence.  Although the government's stance in this was not

4    something that was conducive, Mr. Brown repeatedly wanted to

5    see if a plea agreement could be worked out.

6         There are just certain cases where the government

7    feels strongly enough that there's really not incentive to

8    plead.  That's the way I felt about this.  Believe me, I

9    would rather not go through this trial.

10        THE COURT:  I appreciate what you're saying.  You

11   reminded me, Mr. Toney, I spent some time with the probation

12   officer here, but she really spent a lot of time in this case

13   and did her best to do what she thought was the right thing,

14   given all the circumstances and particularly the issues of

15   variance and other sentences that were imposed.

16        So I congratulate her on a very thoughtful report.  It

17   was thoughtful.  I had the option to spend time with her and

18   realized how hard she addressed some of these -- addressed

19   some of these difficult, difficult issues.

20        Any reason that judgment and sentence should not

21   proceed at this time?

22        MR. TONEY:  No.

23        THE COURT:  Anything you want to say, counsel?

24        MR. REARDON:  Yes, Your Honor.

25        Defendant had an opportunity to accept responsibility.

The fact that there was not a plea agreement is irrelevant.
If he was remorseful, he could have walked into this court
and fallen on the sword and pled guilty to these charges.

Furthermore, the court is proper to ask him how he
feels about the victims.  He saw no issue and had no
difficulty sending this court a letter, but he has not made
any attempt to contact any of the victims in this case,
Ms. Archer or Ms. Morris, to express to them his remorse.

We've been in touch with both of them, and neither of
them have had any contact whatsoever.  This defendant has
made no attempts to reconcile his actions or to apologize to
them.

Finally, Your Honor, the 360-month,
bottom-of-the-guideline sentence is for the defendant who
checks all the boxes.  This defendant did more than that.  He
went above and beyond what that defendant who just falls
under the guideline range or gets to the bottom of the
guideline range did.

He brutalized these girls, tortured these girls and
put them on the stand and made them recount that torture
before a jury of 12 citizens.

The 360-month sentence, the bottom of the guideline
range, is not appropriate for this defendant.  The
government's recommended sentence of 480, we believe, is
appropriate, and we ask the court to impose that sentence.

1          THE COURT:  Anything further?

2          MR. TONEY:  I don't think he knew any way and

3    believed -- I would never advise a client to try to contact a

4    victim.

5          THE COURT:  That isn't typical from what I've seen.

6          MR. TONEY:  I'm not sure he knew how.  The last we

7    heard, Ashlyn had run off again.

8          THE COURT:  I don't think -- my concern was not

9    contacting the victims.  It was how he felt about what he did

10   to them.  I get a general statement from him and I think

11   maybe this defendant may not be emotionally capable of

12   understanding perhaps the full impact of what he did.  He's a

13   little inarticulate.

14         I take him at his word he feels some remorse.  Maybe

15   great remorse.  I will accept that.  What I was searching for

16   was an understanding of what happened to these girls

17   individually and how he felt about this contact toward them

18   individually as opposed to generally.

19         I think this is a case that cries out for some

20   specific indication that the defendant appreciates the

21   brutality and the pain that he has inflicted upon these

22   girls.  I'm not sure he really understands it yet.  I think

23   in time he will.  Maybe he doesn't have the ability to

24   express himself.  That might be a problem, but that's not --

25   that's not what I was looking for.

1          I was looking for something very explicit about these

2     feelings about these girls he tried to destroy emotionally

3     and practically physically.

4          I'm looking at -- anything further?

5          MR. REARDON:  No.

6          MR. TONEY:  No.

7          THE COURT:  Here's a concern that I have.  In this

8     kind of a case, I think variance is extremely important

9     because these cases, if they ever go to trial, bring out the

10    sense of anger that none of us can hardly contain because we

11    have children.  They are girls of our own, granddaughters.

12    That's something that crosses your mind.

13         I think we have to be careful about how we approach

14    these kinds of cases in light of the fact that almost all of

15    them result in pleas before trial for the very reasons we're

16    getting into now.  They elicit enormous anger, passion,

17    feeling for the victim, and I think that is something that,

18    while, as I said is very important, as a judge I have to look

19    and see what has been the course of punishment imposed in

20    this district.

21         I'm looking at the following -- these are all pleas

22    now -- 60 months -- these are the same charges:  57 months,

23    60, 151 months was the case that I had, which was a plea,

24    frankly, and was somewhat similar conduct, but it was a plea

25    agreement and the defendant received 151 months, which, by

the way, was the highest sentence received except for one

other case.  108 months, 120 months, 151 months, 105 months,

90 months, 18 months, 90 months, 121 months.

I don't pretend to say that those cases are what

happened here because they were not, but there were two cases

that probably exceeded the brutality of this case, if you can

measure this type of conduct.  That was the McKesson case,

which was a plea agreement.  He was a cooperator.  He

received 235 months.  Then Moss who received 360 months for

this specific conduct as a result of a jury verdict.

The government points out correctly, that I think

standards for punishment have arisen since the Moss case, not

since the McKesson case.  The Moss case was 2003.  I accept

that.  That's a fact I have to consider.

But in all these cases, there's been nothing close to

480 months.  I think that's an excessive sentence under the

circumstances.  I just don't think there's any way this court

can justify that sentence in light of what has been imposed

on other defendants, two of whom had conduct that exceeded

the brutality and cruelty of this defendant.

The question I have is whether I accept the

recommendation of the probation officer for the reasons she's

provided or impose a sentence of 360 months, which is the

bottom of the guidelines.  I'm persuaded that 360 months is

appropriate and I do so for the following reasons:

I find that defendant's failure to understand and to
appreciate what he has done to these girls is notable, his
letter, which he had time to think about, his statements
today, which I'm sure he has thought about, I think that is a
sentence that is most appropriate under these circumstances.

I'm focusing now on the defendant's attitude towards
the victims, specifically, the two young girls who testified,
and even the person who proclaims love and affection for him
because he brutalized her when she was working for him as a
prostitute.

I feel that it's appropriate for a defendant under
these circumstances to have some individuation of his
conduct.  Not just generally bad conduct, bad choices
violating the law, but what he did to these individual girls.

To me, that is important and I think you should spend
some time in your days in prison, sir, to understand that, to
understand the pain you've inflicted on these girls.  As I
said, I don't think this pain that you inflicted on them --
it's hard to even calculate what that does.  They came out of
a bad circumstance, so somehow maybe it wasn't so tough on
them.

But they're human beings.  They're little girls.
There's a chance to save them and try to destroy them, and
you made the choice of trying to destroy them as human
beings, degrading them to the point that they're animals

1   servicing their clients.  They're things.  Objects.  That's

2   the kind of attitude that leads toward the brutality that you

3   committed and the brutality that seems to plague our society,

4   so I think the sentence of 360 months is the appropriate

5   sentence in this case under all the circumstances.

6        The courts finds that that sentence is appropriate

7   under the factors I must consider under 3553.  Specifically,

8   in that regard, I want to just comment on those factors that

9   I have to consider.

10        Obviously, the circumstances of this offense, which

11  was carried out over a lengthy period of time, the

12  characteristics of this defendant, his attitude toward the

13  victims, the fact that this must reflect the seriousness of

14  the offense, promote respect for the law and provide a just

15  punishment for the offense and to afford adequate deterrence

16  of such conduct in the future and protect the public, I think

17  that all those factors in this case counsel this court to

18  impose a sentence at the bottom of the guidelines of

19  360 months.

20        Whether it's 300 or 360 months, sir, you're going to

21  spend most of your adult life in prison until you're in your

22  fifties.  The difference is 20 years versus -- 25 years

23  versus 30 years, which is not significant.

24        The bottom line:  You'll spend most of your life

25  thinking about what you've done and hopefully becoming a

1    better person, and, more importantly, a person who turns

2    himself toward the view that he's here to help others rather

3    than hurt others.  That's a big step and you'll have plenty

4    of time to develop that attitude, and I hope you do.

5          It's obvious in the letters I received you made a good

6    impression on other inmates.

7          Do you wish to say something?

8          THE DEFENDANT:  I was just about to say that is true,

9    sir, but, sir, you say I don't understand.  I don't feel for

10   the people.  I really do.  I understand where you're trying

11   to come from.  But, sir, it wasn't -- it was not nothing that

12   I can say that could help you understand that over this time

13   that I have thought about that, that I have completely

14   considered everything, the fact that if I do spend my adult

15   life in jail, the circumstances of my children and everybody

16   else's children, I get exactly what you're saying.

17         THE COURT:  You made a comment.  There are things you

18   can say.  They are things you should say.  You've got to get

19   that out.  If you're going to help others, you've got to

20   express your feelings toward those victims and build upon

21   those feelings of remorse and whatever religious feeling,

22   whatever is in your heart to help others.  That's what I'm

23   suggesting.  You've got to learn how to express yourself in

24   that respect.

25         THE DEFENDANT:  Exactly, sir.

1          THE COURT:  Do you understand what I'm saying?

2          THE DEFENDANT:  Yes, I do, sir.

3          THE COURT:  Pursuant to the Sentencing Reform Act, it

4    is the judgment of the court that the defendant, Deandre

5    Lornell Brown, is hereby committed to the custody of the

6    Bureau of Prisons for a term of 60 months as to Count One and

7    360 months as to Counts Two, Three, Four and Five, all to be

8    served concurrently for a total of 360 months.

9          The defendant shall pay a special assessment of $500;

10   payment to begin immediately.  The court finds that the

11   defendant does not have the ability to pay a fine and

12   imposition of a fine is waived.

13         It is further ordered that the defendant shall pay

14   restitution in the amount of 5,200 to victim QM.  Restitution

15   is to be sent to the clerk of court who shall forward it to

16   the victim as described in the victim impact section.

17         If incarcerated, payment of restitution is due during

18   imprisonment at the rate of not less than $25 per quarter,

19   and payment shall be through the Bureau of Prison Inmate

20   Financial Responsibility Program.

21         Upon release from imprisonment, the defendant shall be

22   placed on supervised release for a term of 36 months as to

23   Count One, 120 months as to Counts Two, Three, Four and Five,

24   all to be served concurrently, for a total term of

25   120 months.

1          Within 72 hours of release from the custody of the

2     Bureau of Prisons, the defendant shall report in person to

3     the probation office in the district to which the defendant

4     is released.

5          While on supervised release, the defendant shall not

6     commit another federal, state or local crime.

7          Shall not possess a firearm as defined in Title 18 of

8     the United States Code, Section 921.

9          And shall not illegally possess controlled substances.

10          The defendant shall submit to the collection of DNA

11     and shall comply with the standard conditions which have been

12     recommended by the United States Sentencing Commission and

13     adopted by this court.

14          The defendant is to register and comply with the

15     requirements of the Federal State Sex Offender Registration

16     Agency in the state and jurisdiction of conviction, Eastern

17     District of California, and in any jurisdiction where the

18     defendants resides, is employed or is a student.

19          Further, the defendant shall refrain from any unlawful

20     use of a controlled substance.

21          Submit to one drug test within 15 days of release from

22     imprisonment, and at least two periodic drug tests

23     thereafter, not to exceed four drug tests per month.

24          The court adopts the special conditions recommended by

25     the probation officer on pages 34 through 36 of the

1    presentence report and imposes all of those as special

2    conditions.

3         The court recommends --

4         MR. TONEY:  We ask for a facility as close to

5    Sacramento as possible consistent with the requirements.

6         THE COURT:  That will be the court's recommendation

7    insofar as that recommendation accords with security

8    classification and space availability.

9         Mr. Brown, you have the right to appeal from this

10   conviction if you believe that there was something unlawful

11   or improper about the conviction and also the sentencing.

12   You have the right to appeal the conviction or the sentencing

13   in this case.

14        Any notice of appeal must be filed within 14 days of

15   judgment.  Actually, this would be the sentencing today,

16   14 days.  If you cannot afford the cost of an appeal, you'll

17   be permitted to proceed without payment of cost.  If you

18   cannot afford counsel, one will be appointed to represent

19   you, and if you request it, the clerk of the court will file

20   a notice of appeal on your behalf.

21        Anything further?

22        MR. TONEY:  With the DUI convictions and the presence

23   of drugs, I'm wondering if you would recommend the 500-hour

24   drug treatment program.

25        THE COURT:  Can you give me a little more information?

1  Has there been a problem with alcohol and drugs?

2       MR. TONEY:  Yes, two DUI convictions in his record as

3  well as the presence of illegal drugs that, I think, was

4  alluded to.

5       THE COURT:  I'll make that recommendation as well.

6  500-hour program.

7       MR. TONEY:  One more thing.  I've talked with the

8  Federal Defender Administrator -- CJA Administrator, and

9  attorney Lindsey Weston, who I think you know, has agreed to

10  take this appeal.  She couldn't be here today.  I ask to be

11  relieved on this.  She will file the notice of appeal in this

12  case.

13       THE COURT:  Ms. Weston will be filing the notice of

14  appeal?

15       MR. TONEY:  Yes, I talked to her yesterday.

16       THE COURT:  I will relieve you with the understanding

17  she will file the notice of appeal.

18       MR. REARDON:  One matter, the victims in this case

19  were contacted.  They were told of the opportunity to speak

20  at sentencing and they declined to appear.

21       THE COURT:  Very well.

22       Thank you, counsel.

23                 (Whereupon, proceedings concluded at

24                 11:38 a.m.)

25                 ---o0o---

1                            ---oOo---

2

3        I certify that the foregoing is a correct transcript

4   from the record of proceedings in the above-entitled matter.

5

6

7                    _____

8                    MICHELLE L. BABBITT, CSR 6357

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          IN THE UNITED STATES DISTRICT COURT

2         FOR THE EASTERN DISTRICT OF CALIFORNIA

3                      ---oOo---

4     BEFORE THE HONORABLE FRANK C. DAMRELL, JR., JUDGE

5                      ---oOo---

6   UNITED STATES OF AMERICA,        )
                                     )
7             Plaintiff,             )
                                     )
8   vs.                              )   No. Cr. S-09-0533 FCD
                                     )
9   DEANDRE LORNELL BROWN,           )
                                     )
10            Defendant.             )
    _____)

11

12                      ---oOo---

13

14               REPORTER'S TRANSCRIPT

15               JUDGMENT AND SENTENCE

16                 FEBRUARY 28, 2011

17

18

19                      ---oOo---

20

21

22

23

24

25   Reported by:       MICHELLE L. BABBITT, CSR #6357

```
 1                          APPEARANCES

 2

 3   For the Government:

 4

                 McGREGOR W. SCOTT
 5               UNITED STATES ATTORNEY
                 501 I Street
 6               Sacramento, California  95814
                 BY:  KYLE REARDON
 7                    -AND-
                      MICHAEL BECKWITH
 8                    Assitant U.S. Attorneys

 9   For the Defendant:

10               J. TONEY
                 Attorney at Law
11               Box 1515
                 Woodland, California 95776
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```